UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No.: 18-2753 (DSD/ECW)

Alexandra Noelle Hussey,

    Plaintiff,

v.                                           **ORDER**

Minnesota State Services for the Blind;
Carol Pandow; Brianna Mehr; Natasha Lamler;
Maurita Christensen; and
Minnesota Department of Employment and
Economic Development,

    Defendants.

    Alexandra Noelle Hussey, 1385 High Site Dr., #307, Eagan, MN 55121, plaintiff pro se.

    Kathryn Fodness, Minnesota Attorney General's Office, Suite 1100, 445 Minnesota Street, St. Paul, MN 55101, counsel for defendants.

This matter is before the court upon defendants' motion to dismiss, plaintiff's motion for leave to amend, and defendants' motion to strike. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion to dismiss, denies the motion for leave to amend, and denies the motion to strike as moot.

## BACKGROUND

This civil rights dispute arises out of plaintiff Alexandra Noelle Hussey's interactions with defendants between 2007 and

2014. Hussey alleges that defendants illegally forced her to withdraw from a state-administered vocational rehabilitation program and made false statements about her in a 2014 assessment report.

**I. The Parties**

Hussey is a legally blind Minnesota resident. Am. Compl. at 9. Defendant Minnesota State Services for the Blind (SSB) provides counseling, training, professional development, and job placement services for the visually impaired. <u>Id.</u> SSB is a division of defendant Minnesota Department of Employment and Economic Development (DEED), a state agency. <u>Id.</u> From 1996 through 2014, SSB provided Hussey with vocational rehabilitation services and support to start a horticulture business. <u>Id.</u> The individual defendants – Carol Pandow, Brianna Mehr, Natasha Lemler, and Maurita Christensen – were DEED employees who provided services and counseling to Hussey. <u>Id.</u>

**II. Vocational Rehabilitation Services**

In 2007, Hussey, a student and employee at the University of Minnesota, was enrolled in a vocational rehabilitation services program through SSB. <u>Id.</u> at 7. Through that program, Hussey received a monthly living stipend and job placement assistance.

Id. As part of her job placement assistance, Hussey was required to prepare an independent plan for employment (IPE).[1]  Id.

In the spring of 2007, SSB asked Hussey to complete an updated IPE.  Id.  Hussey was reluctant to do so because she believed that the updated information would cause her to lose her stipend and job at the University of Minnesota.[2]  Id. at 8-9. Hussey alleges that she agreed to complete the updated IPE, but only after SSB told her that it would terminate her stipend if she did not do so.  Id. at 8.

Soon thereafter, Hussey found temporary employment through the AmeriCorps Vista program.  Id.  Hussey continued to work with SSB to find permanent employment.  Id.  In late 2007, SSB assigned Hussey a vocational rehabilitation counselor (VRC).  Id. Hussey told her VRC that she wanted to become an environmental lawyer, but claims that the VRC was condescending and did not help her with job placement or law school applications.  Id. at

---

[1] An IPE outlines a disabled individual's vocational goals and the services, guidelines, and criteria the supporting state agency will provide to help reach those goals.  29 U.S.C. § 722(b)(1). The IPE process requires individuals to undergo a comprehensive eligibility assessment to determine their "unique strengths, resources, priorities, concerns, abilities, capabilities, interests, and informed choice, including the need for supported employment ... of the eligible individual."  29 U.S.C. § 705(2).

[2] Hussey does not explain the basis for her belief.

3

9. SSB assigned Hussey a new VRC, but Hussey claims that the new VRC also failed to properly assist her. Id.

In late 2008, Hussey was scheduled to interview for a permanent position at Lutheran Social Services. Id. Hussey's new VRC recommended that she not pursue the position because it required a valid driver's license, which she did not have. Id. The VRC also dissuaded Hussey from pursuing a temporary position with the University of Minnesota. Id. at 10. Instead, the VRC recommended that Hussey attend training at Vision Loss Resources. Id. Hussey agreed to the training but found the experience "odd" because it included unusual braille and JAWS training. Id. Vision Loss Resources released Hussey from the program in April 2009 following an argument she had with the project manager. Id. According to Hussey, SSB blamed her for the argument and suggested that she seek counseling. Id.

In July 2011, Hussey secured permanent employment with Crisis Connection. Id. at 12. She quit several months later due to concerns that management did not treat employees and clients properly. Id. Hussey also reported to her VRC that she was bullied at Crisis Connection. Id. She alleges that SSB did not address her concerns. Id.

**III. Business Start-Up**

In addition to providing rehabilitation services, SSB helped Hussey start a small horticulture business between 2010 and 2014. Id. SSB approved Hussey's initial business plan and provided funding for new supplies. Id. at 13. SSB later told Hussey, however, that she made too many changes to her initial business plan and that she would have to complete a revised plan. Id.

In 2013, SSB assigned Hussey yet another VRC, defendant Natasha Lemler, to assist Hussey in revising her plan. Id. Soon thereafter, Hussey requested another VRC because she felt that Lemler did not timely respond to emails and was difficult to work with. Id. at 13-14.

In January 2014, Hussey met with defendant Carol Pandow to discuss her business plan and her dissatisfaction with SSB's assistance. Id. Pandow rejected Hussey's business plan and requested that Hussey undertake another assessment to determine suitable employment opportunities. Id. Hussey disagreed that she needed another assessment and appealed Pandow's decision to SSB's workforce director. Id. It appears that the director supported Pandow's decision. Id.

In mid-2014, defendant Maurita Christensen completed Hussey's revised assessment. Id. Hussey claims that the

assessment included false information about her service dog's retirement date and other unspecified defaming statements about her personality and "thought processes."  Id. at 15.  Hussey complained to Pandow, who refused to amend the assessment.  Id. Pandow instead recommended that Hussey "work with her team to resolve the problem."  Id.

Hussey alleges that the false information in the assessment caused defendant Brianna Mehr to challenge her updated business plan.  Id.  Hussey further alleges that SSB shared the false information with "at least two others" outside of SSB.  Id. at 16-17.  Hussey claims that SSB staff ultimately stopped working with her, which forced her to withdraw from SSB programing in July 2014.  Id.

**IV. This Suit**

On September 25, 2018, Hussey commenced this action.  On January 3, 2019, she filed an amended complaint alleging violations of the Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Social Security Act, the Fourteenth and Fifteenth Amendments, 18 U.S.C. § 1001, the Minnesota Human Rights Act (MHRA), and the Minnesota Government Data Practices Act (MGDPA). She also brings common-law claims for criminal defamation, public

misconduct, intentional infliction of emotional distress, negligence, fraud, and bribery. Hussey seeks $3,000,000 in damages, punitive damages, removal of the false information in her assessment, and a written apology and admission of guilt. Defendants now move to dismiss and to strike the second amended complaint and Hussey moves for leave to amend.[3]

**DISCUSSION**

**I. Motion to Dismiss**

   **A. Standard of Review**

      **1. Rule 12(b)(1)**

A court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). In a facial challenge under Rule 12(b)(1), the court accepts the factual allegations in the pleadings as true and views the facts in the light most favorable to the nonmoving party. Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008); see also Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) ("The nonmoving party receives the same protections [for facial attacks under

---

[3] On May 13, 2019, Hussey moved for leave to file a second amended complaint. A few days later, Hussey filed a second amended complaint without the court's permission. ECF No. 182. The court will not consider the improperly filed second amended complaint and will instead assess the sufficiency of the amended complaint. ECF No. 9.

7

Rule 12(b)(1)] as it would defending against a motion brought under Rule 12(b)(6)."). In considering a facial challenge, the court limits its inquiry to the pleadings. Osborn, 918 F.2d at 729 n.6. The pleadings may include matters of public record. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

**2. Rule 12(b)(6)**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not

sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

In evaluating a complaint by a pro se plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). A pro se plaintiff "still must allege sufficient facts to support the claims advanced," however. Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 802 (8th Cir. 2006) (internal citation omitted).

A court need not consider matters outside of the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). A court, however, may consider matters of public record and materials that do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings." Porous Media Corp., 186 F.3d at 1079 (citation and internal quotation marks omitted). Here, the court properly considers the addendum to the amended complaint, ECF No. 14; a letter and explanation regarding the IPE, ECF Nos. 98 and 104; the business plan, ECF No. 103; and an amendment to the IPE, ECF No. 106. The court has reviewed the many other exhibits, including those filed after the hearing on the instant motions, and concludes that they are not properly considered in the context of this motion.

**B. Immunity**

The Eleventh Amendment bars federal jurisdiction of state-law claims against a non-consenting state, state agency, or state official in their official capacity unless either Congress has abrogated the state's immunity, or the state has expressly waived its immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984). The Eleventh Amendment bars federal jurisdiction even when a state has waived immunity to allow the cause of action to proceed in state court. Id.; see also Degidio v. Perpich, 612 F. Supp. 1383, 1389 (D. Minn. 1985) (holding that the Minnesota Tort Claims Act does not waive Minnesota's state immunity under the Eleventh Amendment in federal court).

Hussey has raised state-law claims against defendants under the MHRA and MGDPA, and for criminal defamation, public misconduct, intentional infliction of emotional distress, negligence, fraud, and bribery. As state agencies, DEED and SSB enjoy Eleventh Amendment protections and the state-law claims against them are constitutionally barred. Further, Hussey's complaint raises official-capacity claims under state law against the individual defendants who were DEED employees at all relevant times.[4] As a result, they too are immunized from Hussey's state-

---

[4] Hussey has not specifically alleged individual-capacity claims against the individual defendants. The court therefore interprets the amended complaint as raising only official-capacity state-law

law claims under the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("[C]laims against state officials in their official capacity are considered claim against the state.").

**C. Official-Capacity Claims**

Hussey also brings official-capacity equal protection claims against defendants under 42 U.S.C. § 1983. Section 1983 states that "[e]very person who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). It is well settled that the Eleventh Amendment bars § 1983 claims against a non-consenting state because § 1983 does not abrogate state immunity. See Quern v. Jordan, 440 U.S. 332, 341 (1979). Therefore, Hussey's § 1983 official-capacity

---

claims. Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995).

claims against SSB and DEED are also barred under the Eleventh Amendment and must be dismissed with prejudice.

Moreover, neither a state nor a state official acting in his or her official capacity are persons under § 1983. Will, 491 U.S. at 71. That is because a suit against a "state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." Id. The individual defendants here were acting as SSB officials and, consequently, are not "persons" under § 1983. Id. As a result, Hussey's official-capacity claims against the individual defendants must also be dismissed.

**D. Individual-Capacity Claims**

Hussey also brings individual-capacity equal protection claims against the individual defendants. The Equal Protection Clause prohibits states from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause "keeps government decisionmakers from treating disparately persons who are in all relevant respects similarly situated." Bills v. Dahm, 32 F.3d 333, 335 (8th Cir. 1994). To establish a violation of the Equal Protection Clause, Hussey must show that the individual defendants treated her differently than similarly situated

individuals.  Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994).

Hussey alleges injury caused by Lemler's assistance, Christensen's assessment, Mehr's actions based on the assessment, and Pandow's support of the other SSB employees.  Although Hussey is generally similarly situated to other legally blind individuals seeking vocational rehabilitative services from SSB, she does not allege that she was treated differently than other disabled persons seeking vocational rehabilitative services.  In fact, Hussey's amended complaint provides no specific examples of differential treatment nor does it reference services or programming provided to other SSB clients, but not to her.  Moreover, the amended complaint does not allege that other disabled persons using SSB's services were not required to draft IPEs, business plans, or undergo assessments as a condition of receiving assistance.

As to the assistance SSB provided, Hussey alleges that she had an eighteen-year relationship with SSB during which SSB provided her with a monthly living stipend, funding to open a horticulture business, job assistance and counseling, and multiple VRCs to help her achieve her vocational goals.  Her dissatisfaction with the individual defendants' assistance and

13

her decision to withdraw from the SSB program does not establish a violation of her right to equal protection. Rather, there appears to have been a substantial personality conflict between Hussey and SSB employees that led to her eventual withdrawal from the program.

Further, Hussey's allegation that she was defamed regarding her personality and "thought processes," is not specific enough to establish differential treatment. Indeed, the amended complaint does not disclose the content of the assessment, nor does it allege that SSB did not require other disabled clients to undergo assessments. As a result, Hussey's individual-capacity claims under the Fourteenth Amendment must be dismissed.

**E. Rehabilitation Act, Title VII, and ADA**

Hussey also brings claims under the Rehabilitation Act, 29 U.S.C. § 701; Title VII, 42 U.S.C. § 2000e-2; and the ADA, 42 U.S.C. § 12101.

"Before filing a federal lawsuit alleging a violation of the Rehabilitation Act, a plaintiff must exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission (EEOC)." Roiger v. Veterans Affairs Health Care, No. 18-591, 2019 WL 572655, at *6 (D. Minn. Feb. 12, 2019) (citing Ballard v. Rubin, 284 F.3d 957, 964 n.6 (8th Cir. 2002)). If a

14

plaintiff fails to timely file a charge with the EEOC, the federal claim is not administratively exhausted. Henke v. Allina Health Sys., 698 F. Supp. 2d 1115, 1123 (D. Minn. 2010). "'Exhaustion of administrative remedies' is required 'because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.'" Roiger, No. 18-591, 2019 WL 572655, at *6 (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)). Because Hussey did not file a charge of discrimination with the EEOC, her claims under the Rehabilitation Act must be dismissed for failure to exhaust administrative remedies.

Hussey has also not received a right-to-sue notice, as required by Title VII and the ADA. Williams, 21 F.3d at 22; see also 42 U.S.C. § 2000e-5(b), (e), (f)(1); 29 U.S.C. § 626(b), (d); Johnson v. U.S. Steel Corp., 943. F. Supp. 1108, 1115 n.3 (D. Minn. 1996); 42 U.S.C. § 12117(a). As a result, Hussey's Title VII and ADA claims must also be dismissed for failure to exhaust administrative remedies.

Even if Hussey had exhausted her administrative remedies, her federal statutory claims would fail on the merits. The

Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance ...." 29 U.S.C. §794(a). Claims brought under the Rehabilitation Act require proof of discriminatory intent. Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011). Like the Rehabilitation Act, the ADA requires that Hussey allege that she was denied participation in services, programs, or activities, of a public entity based on her disability, Loye v. Cty. of Dakota, 625 F.3d 494, 496-97 (8th Cir. 2010), and that defendants acted with discriminatory intent. Meagley, 639 F.3d at 389.

Although Hussey was dissatisfied with many of the services SSB provided and the procedures she had to follow in order to receive those services, she has not alleged that SSB ever refused to provide her with services. Nor has she alleged that she suffered discrimination solely based on her disability or that defendants acted with discriminatory animus. Rather, the record shows that SSB - an organization dedicating to assisting the visually impaired - and its employees provided Hussey with

vocational services for eighteen years, accommodated her demand to work with different VRCs, provided her funding and other support to start a small business, and gave her a monthly stipend. The fact that Hussey was dissatisfied with SSB does not give rise to an actionable federal claim under the Rehabilitation Act or ADA.

Hussey's Title VII claim fails for the additional reason that she was not an SSB employee. Title VII prohibits "an employer from discriminating against an employee who has opposed any practice made an unlawful employment practice by this subchapter, or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Although SSB provided services to Hussey, it did not employ her. As a result, her claim under Title VII must be dismissed.

**F.  Other Claims**

Hussey's remaining claims are also untenable. Hussey's claim under the Social Security Act fails because she does not specify which provision of the Social Security Act she believes defendants violated, nor does she claim that defendants' conduct caused her to lose any Social Security benefits.

Hussey's claim under 18 U.S.C. § 1001, which criminalizes making false statements and falsifying a material fact to the United States, fails because that statute does not provide a private right of action. Moreover, Hussey does not allege that defendants made any false statements or falsified any material facts to the United States.

Hussey's claim under the Fifteenth Amendment, which prohibits the government from denying a citizen the right to vote based on "race, color, or previous condition of servitude," fails because, among other things, she does not allege that she has been deprived of the right to vote.

**II. Motion to Amend**

Except in cases where a party may amend its complaint as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, there is no absolute right to amend ...." Doe v. Cassel, 403 F.3d 986, 990 (8th Cir. 2005). A district court may refuse to grant leave to amend pleadings for "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987). A motion to

amend is futile if it cannot survive a motion to dismiss. In re Senior Cottages of Am. LLC, 482 F.3d 997, 1001 (8th Cir. 2007); see also Lunsford v. RBC Dain Rauscher, Inc., 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008).

Hussey does not include any new theories of relief or factual allegations in her proposed second amended complaint. Rather, she seeks to again amend the complaint so it is "brief, numbered, and includes exhibit filing data as well as applicable law." ECF No. 171 at 2. Given that Hussey's claims in the amended complaint are legally untenable and the second amended complaint does not raise new theories of relief or additional facts, the proposed second amended complaint is futile. As a result, the court denies her request for leave to amend.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss [ECF No. 26] is granted;
2. The motion for leave to amend [ECF No. 171] is denied;

3. The motion to strike [ECF No. 199] is denied as moot; and

4. The action is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 11, 2019

s/David S. Doty
David S. Doty, Judge
United States District Court